## A05A0141. WILSON v. THE STATE.
(609 SE2d 703)

PHIPPS, Judge.

Charles Wilson was convicted of possession of cocaine. With the assistance of his appointed trial lawyer, he moved for a new trial on the general grounds. After the trial court denied the motion, Wilson filed a notice of appeal pro se. With the assistance of a new attorney, he filed an appellate brief seeking to overturn his conviction based on claims that the evidence was insufficient to support the verdict and that his trial attorney was ineffective in, among other things, failing to raise a chain of custody objection to admission of the cocaine he allegedly possessed.[1] Although the evidence was sufficient, Wilson's conviction must be reversed due to the ineffective assistance of trial counsel. Remand for a hearing is unnecessary because the matter is determinable from the record.[2]

Wilson was Melody Thomason's boyfriend. Thomason was on probation for cocaine possession. On the night in question, Thomason's brother telephoned her probation officer to report his suspicion that Thomason and Wilson had gone to a motel to smoke crack cocaine. The probation officer and several City of Covington police officers investigated. After ascertaining that a room in the motel was registered to Thomason, the officers went to the room, identified themselves as police, and knocked loudly on the door. No one answered, so they obtained a key to the room. They attempted to enter but the door was latched. Thomason appeared at the door and unlatched it. Her hair was damp, and she told the officers that she had taken a shower. Wilson was lying on one of the beds in the room, pretending to be asleep.

Pursuant to Thomason's waiver of Fourth Amendment rights as a condition of probation, the officers searched the room. Officer George Cribbs searched the bathroom. He could tell the toilet had been flushed recently, because he could hear it running. On the shower floor, Cribbs found a wet white powdery substance that appeared to be cocaine. Cribbs retrieved the substance and put it on a piece of cardboard. On the bathtub counter near a coffee pot, Cribbs observed a small amount of powdery substance that also had the appearance of cocaine. He collected the substances found on the shower floor and bathroom counter, bagged them, and turned them over to Officer Donald Buckelew. Under the mattress of the bed on which Wilson was lying, officers found a crushed soft drink can. They

---

[1] Wilson's ineffective assistance claim was thus raised at the earliest practicable moment. See generally *Rucker v. State*, 270 Ga. 431, 435 (6) (510 SE2d 816) (1999).

[2] *Mackey v. State*, 235 Ga. App. 209 (1) (509 SE2d 68) (1998).

suspected that the can had been used as a smoking device, because there were holes in the can; and on the can was a substance that had the appearance of cocaine residue. Thomason and Wilson were arrested and charged with possession of cocaine.

Buckelew put the substances from the shower floor and bathroom counter into two separate bags that were both placed in a larger plastic bag. The larger bag was admitted in evidence as state's Exhibit One. Buckelew testified that he had placed the two bags in a lock box at Covington police headquarters where they remained until they were taken to the Georgia Bureau of Investigation crime lab. Buckelew further testified that the city police department's evidence technician had access to the lock box.

GBI crime lab forensic chemist Lynn Black identified two sealed bags in state's Exhibit One as those turned over to her for analysis. She was able to identify the exhibit because it bore a unique crime lab case number, and her initials were on the seal. A property sheet was attached to the envelope in which the state's exhibit was delivered to the crime lab, but Black testified that she did not see the sheet because "the people in the front office take care of that." Because the substance amounts in the two bags were so small, Black analyzed only the substance taken from the bathroom counter. She described it as a solid material residue that tested positive for cocaine.

As a result of the cocaine possession charge, Thomason's probation was revoked and she served over a year in prison. At Wilson's trial, she testified that she and Wilson had been smoking crack cocaine on the night in question. According to Thomason, the cocaine was procured by Wilson and remained in his control. Thomason testified that when the police knocked on the motel room door, Wilson went into the bathroom and disposed of a glass pipe they were using to smoke the cocaine by flushing it down the toilet. Due to this incident, Thomason was barred from having any contact with Wilson. As a result, by the time of Wilson's trial, she had a new boyfriend; and Wilson had stopped supporting her and their children.

Wilson did not testify. In closing argument, his attorney pointed out that Thomason had rented the motel room, that she had appeared at the door with wet hair, that she was on probation for a drug offense, that on the scene she had denied there were any drugs in the room, and that at trial she was angry with Wilson because their relationship had ended and he had quit paying child support. Counsel thus argued that Thomason's testimony was not sufficiently reliable to show beyond a reasonable doubt that Wilson was in possession of the cocaine.

Wilson's attorney requested several jury instructions, including one that mere presence at the scene of a crime or in the vicinity of

contraband is not sufficient to establish guilt.[3] The trial court refused to give certain of the requested instructions, including the one on mere presence. The court found that the latter instruction duplicates the instruction that " '[f]acts and circumstances which merely place upon the defendant a grave suspicion of the crime charged, or which merely raise a speculation or conjecture of the defendant's guilt, are not sufficient to authorize a conviction of the defendant.' [Cit.]"[4] By not objecting to the jury instruction or reserving his objections upon inquiry by the trial court, defense counsel waived Wilson's right to appellate review of jury instruction issues.[5]

1. There is no merit in Wilson's challenge to the sufficiency of the evidence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of witnesses.[6] Conflicts in the testimony of witnesses are matters of credibility for the jury to resolve.[7] Viewed in a light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find Wilson guilty of cocaine possession beyond a reasonable doubt.[8]

2. We find merit in Wilson's claim that trial counsel's performance was deficient, both in his failure to challenge admission of state's Exhibit One based on the state's failure to establish the required chain of custody and in his failure to preserve objections to the jury charge.

(a) To prevail on a claim of ineffective assistance of counsel,

> a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different.[9]

There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action was sound trial strategy.[10] Although we generally presume that counsel's actions were strategic in the absence of

---

[3] E.g., *Ridgeway v. State*, 187 Ga. App. 381, 382 (370 SE2d 216) (1988).

[4] *Quintana v. State*, 276 Ga. 731, 735 (6) (583 SE2d 869) (2003).

[5] *Jenkins v. State*, 272 Ga. 250, 251 (2) (527 SE2d 192) (2000).

[6] *Morgan v. State*, 263 Ga. App. 32 (1) (587 SE2d 177) (2003).

[7] *Maness v. State*, 265 Ga. App. 239, 240 (1) (593 SE2d 698) (2004).

[8] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[9] *McMillian v. State*, 263 Ga. App. 782, 785 (3) (589 SE2d 335) (2003).

[10] *Herndon v. State*, 235 Ga. App. 258, 258-259 (509 SE2d 142) (1998).

testimony to the contrary,[11] we can divine no strategic reasons to support the omissions chargeable to counsel here.

(b) Proving a chain of custody for fungible evidence

> means accounting for the safekeeping and transportation of the evidence from seizure to trial. Law enforcement agencies and prosecutors have developed routine practices for the identification, storage, and transportation of evidence. Evidence such as suspected cocaine, seized from a crime scene, is typically placed in a sealable evidence bag that can be marked with the date, time, location, suspect, arresting officer, and other particulars. The evidence should be promptly delivered to a safe, suitable storage site that provides "reasonable assurance" that the evidence will not be tampered with or corrupted. Evidence may be sent by certified mail, return receipt requested, to a crime lab and sent to the prosecutor in the same manner. The mail receipts, once identified by the witness, are admissible to help prove the chain of custody. . . . For fungible evidence that has been tested, it generally is sufficient to provide the testimony of the police officer who seized and transported the evidence, according to the department's routine, and the lab technician who tested the evidence and recorded the results according to the crime lab's routine.[12]

" 'Where the State seeks to introduce evidence of a fungible nature, it need only show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution.' "[13]

The state failed to establish an adequate chain of custody to authorize admission in evidence of its Exhibit One. Although Cribbs testified that he collected the substances in state's Exhibit One, bagged them, and turned them over to Buckelew, he did not testify that he had made any identifying markings or writings on the bag or bags or that he had sealed them.[14] Buckelew testified that he placed the substances in a lock box at police headquarters, to which the department's evidence technician had access. But, like Cribbs, Buckelew did not testify to any identifying markings on the bag or bags or that they were sealed; and he did not testify that "only" he or the

---

[11] Id.

[12] (Footnotes omitted.) Milich, Ga. Rules of Evidence, § 7.1, pp. 81-83 (2nd ed. 2002).

[13] (Footnote omitted.) *Thompson v. State*, 260 Ga. App. 253, 254-255 (1) (581 SE2d 596) (2003).

[14] Compare id.

evidence technician had access to the lock box.[15] Black testified that the substances in state's Exhibit One were turned over to her for analysis and that the bags were sealed. But no showing was made how the bags were transported from the local police department or received by the crime lab.[16]

*Mathis v. State*,[17] relied on by the state, holds that "[t]he fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible."[18] Here, more than one of the persons in control of the substance failed to testify. In *Mathis*, the defendant presented no evidence of tampering or substitution. Here, Wilson argues that there is such evidence because the investigating police officers testified that the powdery substances were seized from the motel room, whereas the crime lab chemist testified that the substance she tested was a solid material.

(c) Counsel's failure to reserve objections to the jury charge constitutes deficient performance only if the charge is objectionable.[19] Since the gist of Wilson's defense was that he was merely present at the scene of the crime, the trial court should have given his request to instruct the jury on mere presence. The trial court refused to give the instruction on the ground that it duplicates the instruction on mere suspicion. We cannot agree. The rule on mere suspicion is the more general rule. The rule on mere presence is a more specific application of the rule on mere suspicion.[20] As such, the two rules are not simply duplications of one another.

(d) Although it does not appear reasonably probable that the result of Wilson's trial would have been different if the jury charge on mere presence had been given, the trial result certainly would have been different if state's Exhibit One, the cocaine, had been ruled inadmissible. Consequently, Wilson's conviction must be reversed.[21]

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 21, 2005.

*James E. Millsaps*, for appellant.

---

[15] Compare id.

[16] Compare id.

[17] 204 Ga. App. 244 (418 SE2d 800) (1992).

[18] (Citations and punctuation omitted.) Id. at 244 (1).

[19] See *Concepcion v. State*, 205 Ga. App. 138, 139 (421 SE2d 554) (1992).

[20] See *Ridgeway v. State*, supra.

[21] The Double Jeopardy Clause does not bar retrial where, as here, "the evidence offered by the State and admitted by the trial court – whether erroneously or not – would have been sufficient to sustain a guilty verdict. . . ." *Lockhart v. Nelson*, 488 U. S. 33, 34 (109 SC 285, 102 LE2d 265) (1988).

Charles R. Wilson, *pro se.*
*W. Kendall Wynne, District Attorney, Robert B. Faircloth, Assistant District Attorney*, for appellee.