A06A0065. KELLEY v. THE STATE.

(630 SE2d 783)

BERNES, Judge.

A DeKalb County jury convicted Deon Dorial Kelley of one count of aggravated assault with a deadly weapon. Kelley appeals from the denial of his amended motion for new trial, contending that the trial court committed reversible error by declining to give his requested jury instruction on "mere presence." For the following reasons, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence." (Citation and punctuation omitted.) Harris v. State, 276 Ga. App. 234 (622 SE2d 905) (2005). Construed in this light, the evidence reflects that in the early morning hours of Saturday, June 29, 2002, a shooting incident occurred outside the private residence of a nightclub owner. At approximately 4:30 a.m., the owner, returning home from his club, exited his vehicle with the night's cash proceeds from his nightclub tucked in his belt and a nine millimeter firearm in his hand. As he exited from the vehicle, two masked men armed with automatic firearms rushed toward him from around the corner of his house demanding that he "give it up." The owner ran toward his home and exchanged gunfire with one of the perpetrators. One perpetrator successfully fled from the scene during the exchange, but the other perpetrator was shot and fell in the owner's driveway.

Once he was able to reach his garage and punch in the keypad code, the owner entered his home and called 911. As he watched from the window, he observed the wounded perpetrator stand up, clutch his stomach, and flee from the scene. The owner stayed in his residence until the police arrived.

Upon their arrival, the police secured the scene, interviewed the owner, photographed bullet holes found in the owner's home and in a next door neighbor's vehicle, recovered six firearm shell casings, and retrieved a sample from a pool of blood located in the owner's driveway. The police also located a watch and watchband located near the pool of blood that appeared to have been struck by a bullet.

An investigator with the DeKalb County Police Department subsequently contacted local hospitals in an effort to locate a gunshot wound victim who had been admitted with wounds to the wrist and abdomen. The investigator's search led him to Kelley, who had been admitted at Grady Hospital at approximately 5:20 a.m. with multiple gunshot wounds, including wounds to his wrist and abdomen. Kelley told the investigator that he had been shot in the parking lot of an Atlanta nightclub at approximately 1:00 a.m., a story that was inconsistent with what Kelley had told an officer with the City of Atlanta Police Department who had previously interviewed him. Based on these inconsistencies and other problems in his story, the investigator obtained a warrant for Kelley's arrest and a search warrant for a blood sample. The Georgia Bureau of Investigation ("GBI") crime lab performed DNA testing and determined that the blood sample taken from Kelley matched the blood obtained from the owner's driveway. The investigator also obtained a bullet that hospital personnel had recovered from Kelley's wrist. The GBI crime lab analyzed the bullet and determined that it had been fired from the owner's nine millimeter.

Kelley was indicted and tried on one count of aggravated assault with a deadly weapon, one count of aggravated assault with the intent to rob, one count of possession of a firearm during the commission of a crime, and one count of possession of a firearm by a convicted felon. At trial, the owner provided his eyewitness account of what had transpired. The State also called a next door neighbor, who testified that from her bedroom window she had heard the owner drive into his residence, followed immediately thereafter by a shuffling of feet "like people playing basketball on asphalt," a "tussling over something like, come on, give me whatever it is that I'm trying to take from you type thing," and an eruption of gunfire. Additionally, the State presented expert testimony concerning the blood and ballistics evidence, and similar transaction evidence of Kelley's two prior convictions for armed robbery to establish intent and course of conduct.

After hearing all the evidence, the jury convicted Kelley of aggravated assault with a deadly weapon. The jury acquitted Kelley of the other alleged offenses.

1. *Sufficiency of the Evidence.* Although Kelley has not raised the general grounds, we conclude, upon reviewing all the evidence in the light most favorable to the jury's verdict, that any rational trier of fact could have found Kelley guilty beyond a reasonable doubt of aggravated assault with a deadly weapon under OCGA § 16-5-21 (a) (2). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See generally OCGA § 16-2-20 (defining "parties to crime"). "The jury,

not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence." *Strong v. State*, 265 Ga. App. 257, 258 (593 SE2d 719) (2004).

2. *Requested Jury Charge.* Kelley argues that he should be granted a new trial because the trial court erred by failing to specifically charge the jury on "mere presence." We disagree.

At trial, Kelley took the stand and admitted that he was outside the owner's residence at the time of the shootout. However, he claimed that instead of the exchange of gunfire being related to an attempted armed robbery, it resulted from an altercation during a drug deal. Kelley testified that he had been paid to drive two individuals to the owner's residence who planned to participate in a drug transaction involving a large amount of cocaine, and that he had been caught in the crossfire when an argument erupted followed by a gun battle. Kelley asserted that he was simply the driver and was not involved in the argument over the drugs, was never masked, did not have a weapon, did not fire a weapon, and had never intended to be involved in or participate in a shooting or robbery.

Based on his version of events, Kelley requested that the trial court instruct the jury on the legal concept that a defendant's "mere presence" at the scene of a crime at the time it is committed, without more, will not authorize a jury to find the defendant guilty of that crime. See, e.g., *Lowe v. State*, 241 Ga. App. 335, 335-336 (1) (a) (526 SE2d 634) (1999) (discussing concept of "mere presence"). The trial court declined to do so.

On appeal, Kelley claims that the trial court committed reversible error by declining to give the requested instruction because mere presence was his sole defense. Kelley further claims that the fact the jury asked certain questions during deliberations, and acquitted him of the other charged offenses, reflects that the jury was confused over the mere presence issue and demonstrates that he was prejudiced by the failure to give the requested charge.

"Mere presence at the scene of the crime is not a recognized defense to a criminal charge. Rather, the rule that mere presence without more is insufficient to convict is really a corollary to the requirement that the state prove each element of the offense charged." *Muhammad v. State*, 243 Ga. 404, 406 (1) (254 SE2d 356) (1979). See also *Whiting v. State*, 269 Ga. 750, 752 (2) (a) (506 SE2d 846) (1998); *Chung v. State*, 240 Ga. App. 394, 396 (2) (523 SE2d 615) (1999). Therefore, it is not reversible error for a trial court to decline to give a charge on mere presence when the "charge, as actually given, was full and fair and substantially covered all the legal principles relevant to the determination of [the defendant's] guilt." (Punctuation and footnote omitted.) *Butts v. State*, 273 Ga. 760, 768 (18) (546 SE2d

472) (2001). See also *Walton v. State*, 272 Ga. 73, 75 (4) (526 SE2d 333) (2000); *Whiting*, 269 Ga. at 752 (2) (a); *Muhammad*, 243 Ga. at 406 (1).[1]

In the present case, the trial court charged the jury

> that the indictment is not evidence of guilt; that the presumption of innocence remains with defendant throughout the trial unless and until overcome by evidence; that the State has the unalterable burden to establish guilt beyond a reasonable doubt; on the credibility of the witnesses and conflicts in the evidence; on the quality of circumstantial evidence to convict; and on parties to a crime.

*Lowe*, 241 Ga. App. at 336 (1) (b). In light of the charge taken as a whole, we conclude that the trial court did not commit reversible error by failing to specifically charge on mere presence. See *Muhammad*, 243 Ga. at 406 (1); *Lowe*, 241 Ga. App. at 336-337 (1) (b); *Parks v. State*, 240 Ga. App. 45, 47 (2) (c) (522 SE2d 532) (1999).

Furthermore, we disagree with Kelley's contention that he was prejudiced by the trial court's failure to give the requested charge. In this regard, Kelley contends that the questions asked by the jury during deliberations showed that the jury was confused about whether he could be convicted for aggravated assault based merely on his presence at the crime scene.[2] However, the record does not support Kelley's position.

The record reflects that as part of its charge, the trial court instructed the jury that Kelley could be found guilty of aggravated assault under a "parties to a crime" theory if the jury concluded that he "directly commit[ted] the crime" or "intentionally help[ed] in the commission of the crime."[3] The questions subsequently asked by the jury reflect that the jury was confused about whether Kelley could be convicted of aggravated assault under such a theory, if the jury concluded that *drug dealing* was the underlying "crime" and that

---

[1] Kelley's reliance on *Wilson v. State*, 271 Ga. App. 359 (609 SE2d 703) (2005) is misplaced. Although in *Wilson* we held that defense counsel's failure to request a jury charge on mere presence constituted deficient performance, we went on to hold that the failure was not prejudicial. Id. at 363 (2) (c), (d). Likewise, the fact that the trial court in the present case failed to charge on mere presence was not prejudicial to Kelley's defense, as we explained supra.

[2] Kelley also argues that jury confusion is shown by the fact that the jury first checked "not guilty" on the verdict form on the count for aggravated assault with a deadly weapon, but then crossed through "not guilty" and checked "guilty." But, the initial checking of "not guilty" could have been a mere scrivener's error. Moreover, the fact that a jury changes its mind during the course of deliberations does not necessarily suggest confusion; it may simply indicate thoughtful, open-minded deliberation.

[3] The trial court did not charge the jury on the other ways in which a defendant may be a party to a crime or on conspiracy. See OCGA §§ 16-2-20 (parties to a crime); 16-4-8 (conspiracy).

Kelley "intentionally help[ed] in the commission of [that] crime."[4] In response, the trial court correctly instructed the jury that Kelley could only be convicted as a party to a crime charged in the indictment. Thereafter, the jury returned its verdict of guilty on the count for aggravated assault with a deadly weapon.

Based on this record, it is clear that to the extent the jury was confused, it was over how the trial court's charge on parties to a crime related to the specific crimes set forth in the indictment. And, the trial court cleared up this confusion through its subsequent instruction, which made clear that in order for the jury to convict Kelley of aggravated assault under a party to a crime theory, the jury would have to find that Kelley directly committed or intentionally helped in the commission of *aggravated assault with a deadly weapon*. Under these circumstances, a specific charge on mere presence would not have clarified matters further.

Finally, Kelley argues that the jury's decision to acquit him on the other three charged offenses, while convicting him of aggravated assault with a deadly weapon, indicates that the jury fully accepted his version of events but mistakenly believed that his mere presence at the scene could justify his conviction. He contends that this is further evidence that he was prejudiced by the failure to give a specific charge on mere presence. Again, we disagree.

We decline to read the jury's decision to acquit Kelley of the other offenses as an acceptance of Kelley's version of events. "Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts." (Footnote omitted.) *Hines v. State*, 276 Ga. 491, 492 (2) (578 SE2d 868) (2003). This is because "[a] conviction on one count and acquittal on another related count may [simply] reflect a compromise or lenity by the jury." Id. Furthermore, we note that the trial court's response to the jury's questions, discussed supra, removed any risk of the jury believing that it could convict Kelley of the charged offense merely because he was a party to a drug transaction.

For these reasons, we conclude that the jury could not have inferred that it could convict Kelley based on his mere presence at the owner's residence. See *Key v. State*, 226 Ga. App. 240, 244 (4) (485 SE2d 804) (1997); *Jones v. State*, 205 Ga. App. 711, 714 (4) (423 SE2d 393) (1992). The trial court did not commit reversible error by declining to specifically instruct the jury on mere presence.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

---

[4] The jury also appeared to be confused about what proof was required on a separate count for possession of a firearm during commission of a crime. Since Kelley was acquitted on that count, he suffered no prejudice from any alleged jury confusion relating to that count.

DECIDED APRIL 26, 2006 —
RECONSIDERATION DENIED MAY 4, 2006 — CERT. APPLIED FOR.

*Gerard B. Kleinrock, Leigh S. Schrope*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.