A07A0453. STRINGER v. THE STATE.
(647 SE2d 310)

MIKELL, Judge.

A jury convicted Charlie Steven Stringer of trafficking in methamphetamine, possession of methamphetamine with intent to distribute, possession of a firearm during the commission of a crime, and no proof of insurance. On appeal, he contends that the trial court erred in denying his motion to suppress and in overruling his chain of custody objection to the admission of the methamphetamine. Finding no error, we affirm.

1. Stringer first contends that the trial court erred in denying his motion to suppress the methamphetamine and weapons because their seizure resulted from an illegal entry into his vehicle. We disagree.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

---

[1] (Punctuation and footnote omitted.) *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004).

Viewed in its proper light, the evidence adduced on the suppression issue[2] shows that on January 25, 2005, Deputy Steven Bradley of the Forsyth County Sheriff's Office noticed Stringer's truck traveling northbound on Highway 400. The truck's taillights were not functioning, so Bradley initiated a traffic stop. When he first approached the truck, Bradley requested Stringer's driver's license and proof of insurance. Stringer, who stated that he had owned the truck for only a few weeks, produced a valid driver's license but no proof of insurance or of ownership of the truck. At that point, Bradley noticed a .410 shotgun, a .22 rifle, and a BB gun in the back seat of the truck.

Bradley ran the truck's vehicle identification number and learned that its registration had been suspended and that it was not insured. Stringer told Bradley that the bill of sale and title were in his home in Dahlonega, and he asked to go home and retrieve them. Believing that the truck might be stolen, Bradley said no, although he allowed Stringer to try to call a friend to bring the documents to the scene. Bradley began writing citations, testifying that he intended to release Stringer and to impound the truck. According to Bradley, standard sheriff's office procedure required impoundment of a vehicle that was not insured.

Bradley then entered the truck to unload the weapons, both for his own safety and because he was going to let Stringer take them with him after the traffic stop had concluded. Because the truck was being impounded, and the weapons were valuable, Bradley was concerned that they might be lost. Stringer stated that there were some Wal-Mart bags in the truck that he wanted to take with him, and Bradley began to gather the bags and the guns. Bradley also discovered a loaded Ruger 9mm stuffed between the driver's seat and the center console, as well as ammunition for a .223 caliber rifle that was not found in the truck. At that point, Stringer became fidgety and nervous and stated that he wanted to change the truck's air filter. Bradley said no.

Bradley found a newly purchased home surveillance camera system in one of the Wal-Mart bags. He testified that as he was removing the Wal-Mart bags from the passenger side floorboard, he saw a black cloth bag laying underneath them. Bradley observed two glass pipes used for smoking methamphetamine in the partially-unzipped bag, as well as a set of digital scales. Bradley then handcuffed Stringer and placed him into custody. Upon searching the black bag, Bradley found a plastic baggie containing suspected

---

[2] We may consider testimony adduced at trial in addition to the testimony submitted during the motion to suppress hearing. See *Postell v. State*, 279 Ga. App. 275, 276 (1) (630 SE2d 867) (2006).

methamphetamine. A pat-down search of Stringer yielded a large bag of suspected methamphetamine in his coat pocket. Trial testimony revealed that the methamphetamine weighed 53.5 grams.

Based on the evidence adduced at the suppression hearing, the trial court concluded that Bradley's decision to impound the truck was reasonable under the circumstances.[3] The court also found that it was reasonable, for reasons of officer safety, for Bradley to search the Wal-Mart bags to verify that they did not contain weapons or ammunition before permitting Stringer to take the bags with him, given the number of guns and ammunition found in the vehicle. The court found as facts that it was very early in the morning, the truck was neither registered to Stringer nor insured, and Bradley found bullets that did not match the weapons he already had located in the truck. Thus, it was reasonable for Bradley to search the bags in the truck, including the Wal-Mart bags and the black cloth bag, to determine whether they contained weapons. The court noted that Bradley was trying to accommodate Stringer by retrieving personal items out of the truck. Moreover, as the court pointed out, an inventory search would have been done immediately before the vehicle was towed away to determine the contents therein.

Stringer contends that the trial court should have suppressed the evidence seized from his truck because Bradley's initial entry into the truck to retrieve the weapons was unreasonable. Stringer argues that the deputy had no legal justification for making a warrantless entry because he had exited the truck, the weapons were not contraband, and therefore Bradley had no reasonable suspicion that there was contraband in the truck. Stringer further argues that a reasonably prudent officer in Bradley's situation would not be warranted in fearing for his safety despite the presence of multiple weapons because Stringer would not be reentering the truck; it was being towed.[4]

Stringer's arguments misperceive the question.

> The question is whether officers were truly pursuing an investigatory or an inventory search. . . . If the former, the search must be pursuant to a valid search warrant or come within an exception to the warrant requirement. If, however, the search of the container is pursuant to a noninvestigatory

---

[3] See *Colzie v. State*, 257 Ga. App. 691, 692 (2) (572 SE2d 43) (2002) (impoundment reasonable considering vehicle's lack of insurance, unsafe location, and lateness of the hour).

[4] Compare *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004) (officer knew that defendant who committed traffic violation would be returning to his car; search justified because reasonably prudent officer in circumstances would be warranted in believing his safety was in danger).

> inventory search, questions of probable cause[ and] the requirement of a warrant . . . are irrelevant. . . . When the police take custody of any sort of container such as an automobile[,] it is reasonable to search the container to itemize the property to be held by the police. This reflects the underlying principle that the fourth amendment proscribes only unreasonable searches.[5]

In the case at bar, the trial court found that the search was a proper inventory search conducted pursuant to a valid impoundment, and, alternatively, was properly conducted for reasons of officer safety under the theory that "[a]n officer who has detained an occupant of a motor vehicle may conduct a search founded on the reasonable belief, based on articulable facts and rational inferences, that the occupant may gain immediate control of a weapon."[6] Construing the evidence most favorably to uphold the trial court's findings and judgment, we conclude that the motion to suppress was properly denied as the search either was a valid inventory search, or the contraband would have been inevitably discovered in an inventory search.[7] Thus, it is unnecessary for us to consider the court's alternative basis for suppressing the evidence.

Justification for an inventory search is premised upon the validity of the impoundment of the vehicle.[8] "Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property."[9] In the case at bar, "[Bradley's] conduct in impounding the vehicle was reasonable, as no one [Stringer] might have called could have lawfully driven the truck because [Stringer] could not present proof of insurance for the truck."[10] Once it is determined that an officer's conduct in impounding a vehicle is reasonable, an inventory search is permissible to serve the legitimate purposes of, inter alia, "protecting police from potential dangers . . . and protecting police

---

[5] (Citations, punctuation and emphasis omitted.) *State v. Evans*, 181 Ga. App. 422, 423-424 (2) (352 SE2d 599) (1986).

[6] (Citations omitted.) *Silva,* supra; accord *Megesi v. State*, 277 Ga. App. 855, 859 (2) (627 SE2d 814) (2006) (physical precedent only) (presence of unsecured weapon in vehicle during traffic stop creates inherently dangerous situation authorizing officer to enter vehicle to secure the weapon).

[7] See generally *Taylor v. State*, 228 Ga. App. 325, 326-327 (1) (a) (491 SE2d 417) (1997) (contents of briefcase admissible because they would have been inevitably discovered in an inventory search).

[8] *Williams v. State*, 204 Ga. App. 372, 373 (419 SE2d 351) (1992).

[9] (Citations and punctuation omitted.) Id.

[10] (Citation omitted.) *Staley v. State*, 224 Ga. App. 806, 807 (1) (482 SE2d 459) (1997). See also *Duvall v. State*, 194 Ga. App. 420, 421 (390 SE2d 647) (1990) (impoundment reasonable where there was no proof of insurance).

against claims for stolen or lost property."[11] Here, Bradley testified that he entered the truck to unload and disable the weapons, both for his own safety and in order to return them to Stringer because they were valuable. As the trial court found, Bradley was trying to accommodate Stringer by returning personal items to him. It was reasonable for Bradley to determine whether the vehicle contained loaded weapons before he had it towed. The evidence shows that the legitimate purposes of an inventory search were served. Weighing the evidence and evaluating Bradley's credibility were matters solely and completely within the province of the trial court. Our role is only to determine whether there was any evidence to support the trial judge's determination. Clearly there was some evidence to support the decision below. The trial court did not err in denying the motion to suppress.

2. Stringer also argues that the trial court erred in overruling his chain of custody objection to the admission of the methamphetamine. Specifically, Stringer objected on the grounds that a state crime lab technician did not testify and that a disparity existed between Bradley's testimony and that of the state crime lab forensic chemist.

> To show a chain of custody adequate to preserve the identity of fungible evidence, the State must prove with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence.[12]

The trial court's ruling that the state has established an adequate chain of custody for the admission of fungible evidence is reviewed for abuse of discretion.[13] We find no such abuse in the case at bar.

First, we note that "[t]he fact that one of the persons in control of a fungible substance does not testify at trial does not, without more, make the substance or testimony relating to it inadmissible."[14] Second, the case upon which Stringer relies in arguing that the chain of custody was not adequately proved, *Wilson v. State*,[15] is distinguishable. In *Wilson*, we held that the state failed to establish an adequate chain of custody for the admission of purported cocaine

---

[11] (Citation omitted.) *State v. King*, 237 Ga. App. 729-730 (1) (516 SE2d 580) (1999).

[12] (Citation omitted.) *Hayes v. State*, 276 Ga. App. 268, 271 (4) (623 SE2d 144) (2005).

[13] *Maldonado v. State*, 268 Ga. App. 691, 692 (1) (603 SE2d 58) (2004).

[14] (Citation and punctuation omitted.) *Hayes*, supra. Accord *Postell*, supra at 278 (2).

[15] 271 Ga. App. 359 (609 SE2d 703) (2005).

residue because the officer who collected and bagged the substance did not testify that he had made any identifying marks on the bag or that he had sealed it; the officer to whom the first officer turned over the bag did not testify to any identifying markings on the bag or that it was sealed, and he did not testify that "only" he or the evidence technician had access to the lock box; and no showing was made how the bags were transported from the local police department or received by the crime lab.[16] We noted that more than one of the persons in control of the substance failed to testify, and we recounted the defendant's argument that he had presented evidence of tampering because the police officers testified that powdery substances were seized from the motel room, whereas the crime lab chemist testified that the substance she tested was a solid material.[17]

The circumstances which caused us to overturn the defendant's conviction in *Wilson* are not present in the case at bar. Bradley testified that once he found the suspicious substances, he turned them over to Detective Michael McCarren of the Forsyth County Sheriff's Office, who is assigned to the narcotics division. McCarren testified that he received a call to respond to the scene at approximately 3:00 a.m. on January 25, 2005; that when he arrived at the scene, all of the evidence, including the large bag of suspected methamphetamine, was laid out on the tailgate of the truck; that after he weighed the bag, he put it inside a larger evidence bag, sealed it, and wrote a description on the back; that he placed the bag in his car and transported it to the evidence locker; that he filled out an evidence form, placed it in the locker with the bag, and locked the locker; and that only the evidence custodian has keys to the locker.

Stormy Reed, who was the evidence custodian at the time, identified the evidence bag as state's Exhibit 2 and testified that it was the same bag which she retrieved from the locker in which the detective had placed it. Reed testified that the bag was sealed when she retrieved it; that she took the bag to her office, placed evidence tape on it and initialed it; that she stored Exhibit 2 in a secure area in her office from January 26 until February 18, when she transported the evidence to the state crime lab; and that she signed it into the crime lab, where it is stored in secure lockers.

Dogney White, the state crime lab forensic chemist who analyzed the substance in Exhibit 2 and identified it as methamphetamine, testified that she received Exhibit 2 from a lab technician and that Reed's submission form, which was introduced into evidence as a business record, accompanied Exhibit 2. White further testified that

---

[16] Id. at 362-363 (2) (b).

[17] Id. at 363 (2) (b).

Exhibit 2 was in the same condition at the time of trial as it was at the time she received it, except that she had opened it to perform her analysis and then resealed it, placing her initials on the evidence bag.

Each witness for the state testified that Exhibit 2 had not been tampered with while in his or her custody.

Stringer contends that the fact that Bradley identified the substance in question as crystalline while White referred to it as a "solid material" created a disparity such as existed in *Wilson* and provided evidence of tampering. We disagree. When White made the reference, she was testifying to the method she used to weigh the evidence and explained to the jury how she obtained the net weight of the solid material alone, excluding the packaging. Considering the context of the testimony, we do not consider the terms "crystal" and "solid material" as mutually exclusive, and Stringer did not thereby show tampering.

Moreover, contrary to Stringer's assertion, the state was not required to present testimony from the crime lab technician who physically retrieved Exhibit 2 from within the lab and brought it to White. "In the absence of affirmative proof of tampering, proof that the evidence was in the custody of the State Crime Lab established the chain of custody. The State need not establish a perfect chain of custody for evidence within the crime lab itself."[18] We find the evidence sufficient to establish the chain of custody for the admission of the methamphetamine which formed the basis of Stringer's conviction.[19]

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 30, 2007.

*Whitmer & Law, George H. Law III*, for appellant.
*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney*, for appellee.

---

[18] (Citation and punctuation omitted.) *Postell*, supra at 279 (2), citing *Maldonado*, supra at 693-694 (1).

[19] See *Postell*, supra; *Campbell v. State*, 136 Ga. App. 338, 340-341 (3) (221 SE2d 212) (1975) (chain of custody deemed unbroken because container was sealed upon arrival for analysis at crime lab and there was no evidence of tampering).