**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J. and BOGGS, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**February 21, 2013**

# In the Court of Appeals of Georgia

A12A2222. SCHWEITZER v. THE STATE.                    DO-085 C

DOYLE, Presiding Judge.

In this interlocutory appeal, Stephanie Schweitzer appeals from the denial of her motion to suppress evidence found in her purse during a traffic stop. She contends that the officer lacked authority to search her purse and that the contents of her purse would not be discovered inevitably as a part of her arrest processing. For the reasons that follow, we affirm.

On review of the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial. Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to these undisputed facts de novo. As to questions of fact and credibility, however, we construe the evidence in favor of the

trial court's findings and judgment, which must be accepted unless clearly erroneous.[1]

Here, the facts are undisputed. A uniformed officer from the criminal investigations division and the property unit in the Hall County Sheriff's Office was driving back from a call about a theft. He noticed a small, black Ford Ranger pickup truck matching a description of a truck implicated in recent thefts and performed a computer check of the license plate on the truck. The information he received indicated that the tag was issued to a full-size Chevrolet pickup truck, not the black Ford he was observing.

Based on that information, the officer initiated a traffic stop and made contact with the driver. The officer began explaining the reason for the stop, and immediately the passenger, Schweitzer, explained that the truck was her boyfriend's and that they had had trouble registering it because of problems with the title. The officer asked Schweitzer for her name, and she said "Heather." The officer asked for her identification and date of birth, and she stated that she did not have identification but gave a date of birth. The officer then walked around to the passenger side of the vehicle as Schweitzer looked for paperwork in the glove compartment. The officer

---

[1] (Citations omitted.) *Wilson v. State*, 308 Ga. App. 383 (708 SE2d 14) (2011).

believed Schweitzer was behaving nervously and trying to discreetly slide her purse underneath her seat. The officer said, "What is your name? Stop lying to me and tell me the truth." Schweitzer replied that her real name was Stephanie Schweitzer and she "may have a warrant on her."

As Schweitzer remained in the vehicle, the officer then contacted dispatch and confirmed that there was an outstanding warrant for failure to appear. At that point, the officer asked Schweitzer to step out of the vehicle and placed her under arrest, handcuffing her hands behind her back. As a backup officer arrived, the officer retrieved the purse from the truck and placed it on the hood of the truck. Schweitzer said, "That's my purse. I don't want you to search it," and the officer told her that he could search it because she was arrested and the purse was going back to the jail with her.

The officer looked inside the purse and initially pulled out Schweitzer's wallet with her identification in it, which confirmed Schweitzer's name. After pulling out the wallet and identification, the officer pulled out a small change purse and opened it, discovering what appeared to be methamphetamine. No other suspected contraband was found.

Based on the encounter, Schweitzer was charged with possession of methamphetamine and giving false information to a police officer. She moved to suppress the evidence obtained during the traffic stop, and the trial court denied the motion, certifying its decision for immediate review. This Court granted Schweitzer's application for interlocutory appeal.[2]

The trial court denied Schweitzer's motion on the ground that discovery of the contents of the purse was inevitable due to a valid police practice to inventory an

---

[2] We find unavailing the State's argument that Schweitzer lacked standing to challenge the search of her purse merely because it was in a vehicle that belonged to another person. The purse was in plain view of the officer during the initial encounter, and the search of the purse was not conducted as part of a larger search of the entire car and its contents. Compare *State v. Harris*, 236 Ga. App. 525, 529 (3) (513 SE2d 1) (1999) (noting the different privacy interests in a vehicle and a passenger's purse in the vehicle). "It is the recognized relationship of the person with the property searched that gives rise to the protective device of suppression." *State v. Jackson*, 201 Ga. App. 810, 813 (1) (412 SE2d 593) (1991). Here, Schweitzer explicitly claimed the purse as hers. See *State v. Hanson*, 243 Ga. App. 532, 542 (532 SE2d 715) (2000) (A purse "is an item that is universally recognized as one in which a person has a reasonable expectation of privacy.") (Barnes, J., concurring specially). Therefore, we conclude that Schweitzer had standing to challenge the search of her purse.

arrestee's personal effects when they are booked into jail.[3] We find no error, based on the record before us.

Under the inevitable discovery doctrine, "if the State can prove by a preponderance of the evidence that evidence derived from police error or illegality would have been ultimately or inevitably discovered by lawful means, then the evidence is not suppressed as fruit of [an impermissible search or seizure]."[4] In other words, "there must be a reasonable probability that the evidence in question would have been discovered by lawful means, and the prosecution must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the illegal conduct."[5]

---

[3] The trial court also based its decision on an alternate ground that the officer had authority to search Schweitzer's purse because it was within her recent possession at the time of arrest, citing *Hill v. State*, 263 Ga. App. 365, 366 (587 SE2d 843) (2003), and *Sprinkles v. State*, 227 Ga. App. 112, 113 (1) (488 SE2d 492) (1997) ("Since the arrest was lawful, the search of items within [the defendant's] immediate possession was lawful as a search incident to a lawful arrest. That [the defendant] was already in the police car and no longer had immediate control over the purse or the overnight bag she had just been carrying does not require a different result. The decisive factor is whether she was, at the time of the arrest, in recent possession of the object being searched.") (citation omitted). We need not reach the merits of that rationale.

[4] *Taylor v. State*, 274 Ga. 269, 274 (3) (553 SE2d 598) (2001).

[5] (Punctuation omitted.) Id. at 274-275 (3).

5

At the outset, we note that the initial traffic stop was lawful because the officer had reason to believe that the truck displayed a license plate issued to another vehicle in violation of the law.[6] The officer's conversation with Schweitzer, who professed knowledge of the registration status of the vehicle, was a permissible part of his investigation of the improperly displayed license plate. Schweitzer quickly identified herself as the subject of a warrant, so the officer had authority to confirm that information and arrest her.

Upon her arrest, Schweitzer was subject to being transported to jail for booking, and the officer, who was familiar with and testified about the jail policy of searching inmate's personal effects, elected to search her purse because he expected them to be inventoried as part of the booking process at the jail. The officer explained his reason for sending Schweitzer's purse as follows:

> [I]f someone's wallet or purse or something like that is in the vehicle, we generally send it with them just for the plain and simple fact that if this person gets to the jail and says, '[O]h, well, where is my purse?' 'I[, the officer,] left it in the car.' 'Why did you do that [–] . . . it had a thousand dollars in it. It had a 24-karat diamond ring in it.' So to protect ourselves from false accusations and things of that nature, we send it

---

[6] See OCGA § 40-2-6.

with them and let the jail check it in. They do their inventory, and everything goes from there.

This demonstrated a valid reason to send Schweitzer's purse to the jail with her, and the officer testified as to the jail's inventory policy.[7] In light of the record before us, we discern no error in the trial court's ruling that the contents of the Schweitzer's purse would have been inevitably discovered as part of the booking process associated with the valid arrest of Schweitzer.[8]

*Judgment affirmed. Andrews, P. J. and Boggs, J., concur.*

---

[7] See *Taylor v. State*, 228 Ga. App. 325, 326 (1) (a) (491 SE2d 417) (1997). Cf. *Clay v. State*, 290 Ga. 822, 830 (2) (725 SE2d 260) (2012) (applying the inevitable discovery rule); *Stringer v. State*, 285 Ga. App. 599, 602-603 (1) (647 SE2d 310) (2007) ("protecting police against claims for stolen or lost property" is a legitimate purpose for searching a properly impounded vehicle).

[8] This rationale is not based on a vehicle search incident to arrest as analyzed in *Arizona v. Gant*, 556 U. S. 332 (129 SC 1710, 173 LE2d 485) (2009), so Schweitzer's reliance on that case on appeal is misplaced.