**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 27, 2015**

# In the Court of Appeals of Georgia

A14A1492. THE STATE v. KAULBACH et al.

BARNES, Presiding Judge.

Suzanne Kaulbach and Misty Caudle were charged in a multi-count indictment with making false statements in a matter within the jurisdiction of the Clayton County Police Department, obstruction of an officer, criminal use of an article with an altered identification mark, and seven counts of theft by receiving. They each moved to suppress evidence recovered during the execution of two search warrants, arguing that police officers entered their property without a warrant or exigent circumstances, and that the subsequently-issued warrants were not supported by sufficient probable cause and were impermissibly overbroad. They also filed special demurrers and moved to dismiss the indictment on several grounds. Following a hearing at which the detective who applied for and obtained the warrants testified, the trial court granted the motions to suppress and denied the motions to dismiss. The State appeals,

and for the reasons that follow, we reverse the trial court's order granting the defendants' motion to suppress evidence.

A detective applied for a warrant to search the premises where the defendants lived for particular items, as well as evidence and fruit of the crimes of burglary and theft. In support of his application, the detective provided the issuing magistrate with an affidavit swearing that another officer had responded to a call from a victim who reported that a trolling motor had been stolen from his boat dock and he thought that two of the residents who lived next door, where the defendants also lived, were responsible. The affidavit stated that the victim also told the first responding officer that he had received an email message from his neighborhood association that contained a photograph of a jonboat that had been stolen from another neighbor, and the victim showed the officer the photograph. The first officer then called the detective, who went to the scene.

The officer and detective looked at the photograph of the stolen jonboat, which was green with white seats, and the victim told them that a few days previously, while standing on the rear deck of his residence and looking next door, he had seen two young men, whom he identified by name, using camouflage-colored spray paint "to conceal a green in color[] [j]onboat in their back yard." The victim said he notified

2

the neighbor whose boat had been stolen. The victim called the police when he saw "the same jonboat" on the property next door, but in a different location next to his driveway. The victim compared the boat to the photograph of the missing boat and told the detective that, "from his property, he could observe [] that the boat was missing its hull identification number" and any identifying stickers.

The detective said in his affidavit that he walked to the edge of the victim's property and observed that the jonboat on the property next door "appeared to have its Hull Identification Number (HIN) removed from the rear portion of the boat," and that it "closely resemble[d]" the stolen jonboat depicted in the photograph the victim had received via email. The detective further stated that while he was investigating, another neighbor approached him to report that a wood splitter and several hand tools had been stolen from his residence on the same street and that he observed what appeared to be his log splitter in the driveway of the subject property.

After that warrant was issued and executed, the detective applied for and obtained a second warrant to search the same premises for the stolen jonboat's "square hull identification plate" with its specific number as well as a roll of multicolored low-voltage wire. The affidavit for the second warrant included all of the information from the first affidavit, plus additional information about two stolen

3

all-terrain vehicles and a jonboat "believed to be stolen," which the detective obtained when he executed the first warrant. The detective averred in his affidavit that he had spoken to one of the two young men whom the victim had identified as spray-painting the jonboat, and the man admitted that he and the other young man had pried the metal HIN plate off the boat and thrown it off the dock into the lake. According to the detective, the young man also said that the other young man had gutted three stolen trolling motors, rolled up the multicolored wiring, and stuck the roll in a storage shed on the subject property.

During the motion to suppress hearing, the detective who applied for and obtained both warrants testified that before the detective arrived at the scene, the victim told one of the officers that a tackle box inside the boat next door belonged to him. The officer went onto the property next door without the defendants' presence or permission, "looked all around the boat," retrieved the tackle box from the boat, searched it, and found a fishing license inside that had been issued to the victim. An officer then gave the tackle box to the victim rather than holding it for evidence, and the State subsequently indicted the defendants for theft by receiving a tackle box. The State also never took possession of a wood splitter, although the defendants were also indicted for theft by receiving a stolen wood splitter.

4

The detective testified that he could see the boat from the victim's property, and he thought it "closely resembled" the boat in the picture that had been reported stolen. While he testified on direct that he could not see an HIN from where he was standing on the victim's property, he also admitted he did not know exactly where on the boat the HIN was supposed to be located. He also testified that two other officers had gone to the defendants' house eight days before he first went to the victim's property, and defendant Kaulbach had invited those officers onto her property to look at the jonboat. She told them it had "show[n] up" on the property a few days earlier, and they left the boat there.

In the trial court's order granting the defendants' motion to suppress evidence seized when the detective executed the search warrant, the court noted that the detective's testimony was contradictory regarding where the HIN plate was supposed to be and whether he could tell from the victim's yard if it was missing from the jonboat in the defendants' yard, although he stated in the warrant affidavit that he could see in plain view that the plate had been removed. The trial court then found that the warrantless search and seizure of the tackle box from the defendants' property before the detective's arrival, without exigent circumstances or consent, was not justified under the "plain view" doctrine and violated the Fourth Amendment.

5

Accordingly, the trial court granted the defendants' motion to suppress evidence as to "the item seized" in that warrantless search.

The trial court further found that, because the State failed to show that the warrantless intrusion was justified, each defendant's motion to suppress was granted "as this Court lacks the discretion to find otherwise based on the testimony of the detective in this case and the applicable law." The court further found that it was "unable to separate the information used to obtain the search warrant from any observations made by the officers while illegally on the Defendants' property" and thus "the items seized and evidence obtained in the execution of the subsequently issued search warrants are the fruits of the poisonous tree and are also suppressed."

The State appeals, arguing that the trial court improperly granted the suppression motions. We agree. A judicial officer may issue a search warrant upon facts sufficient to show probable cause that a crime is being committed or has been committed. OCGA § 17-5-21 (a).

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citation and punctuation omitted.) *DeYoung v. State*, 268 Ga. 780, 786-787 (7) (493 SE2d 157) (1997). "Hearsay can be the basis for issuance of a warrant so long as there is a substantial basis for crediting the hearsay." (Citation and punctuation omitted.) *Ward v State*, 234 Ga. 882, 883 (218 SE2d 591) (1975).

A trial court examining whether evidence resulting from the execution of a search warrant should be suppressed is "guided by the Fourth Amendment's strong preference for searches conducted pursuant to a warrant, and the principle that substantial deference must be accorded a magistrate's decision to issue a search warrant based on a finding of probable cause." *State v. Palmer*, 285 Ga. 75, 77-78 (673 SE2d 237) (2009). When this court then reviews the trial court's decision on the motion to suppress, we

> will review the search warrant to determine the existence of probable cause using the totality of the circumstances analysis set forth in *Illinois v. Gates*, 462 U.S. 213 (103 SCt 2317, 76 LE2d 527) (1983), . . . to determine if the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant. The Fourth Amendment requires no more.

(Citations and punctuation omitted.) Id. at 78. On appeal of a trial court's decision on a motion to suppress, we will uphold findings as to disputed facts unless they are

clearly erroneous, and we review de novo the trial court's application of the law to the facts. Id.

Reviewing the trial court's application of the facts to the law in this case, we conclude that the court erred in granting the defendants' motion to suppress evidence seized pursuant to the search warrants. First, the State is correct that the detective properly excluded from his search warrant affidavit any information related to the other officer's illegal search and seizure of the tackle box before the detective's arrival. If an affidavit supporting an application for a search warrant

> contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admissible.

(Citations and punctuation omitted.) *Rothfuss v. State*, 160 Ga. App. 863, 864 (1) (288 SE2d 579) (1982). See *Glenn v. State*, 288 Ga. 462, 464 (2) (704 SE2d 794) (2010). Accordingly, the detective's omission of the illegal evidence from his affidavit was proper, as that evidence was irrelevant to the determination of whether

8

the information the detective did include was sufficient to form the basis for a finding of probable cause.

According deference to the trial court's implication that the detective could not actually tell whether the HIN or HIN plate was missing from the jonboat on the defendants' property, a review of the remaining information in the detective's affidavit reveals that, stripped to its essence, the detective gave the following evidence that stolen property might be located on the defendants' property:

• the victim told him someone had stolen a trolling motor from the boathouse on his dock,

• the victim said he received email from his neighborhood association reporting that another neighbor's green jonboat had been stolen, which included a photograph of the stolen boat,

• the victim saw from his property two young men, whom he identified by name, spray painting a green jonboat with camouflage paint next door,

• the victim saw "the same jonboat" on the property next door and saw that it was missing the HIN and "had been stripped of any identifying stickers,"

• the detective saw the boat from the neighbor's property,

9

- the boat "closely resembled" the boat in the picture attached to the neighborhood email that the victim showed the detective,

- a second neighbor said someone had recently stolen a wood splitter and several electric hand tools from his basement, and

- the second neighbor said he observed what appeared to be his wood splitter in the driveway of the defendants' property.

Contrary to the defendants' argument, none of this evidence is related to the illegal search and seizure of a tackle box or the officers' illegal examination of the boat that occurred before the detective arrived. The trial court's finding that it could not separate the information used to obtain the search warrant from any observations made by officers while illegally on the defendants' property is clearly erroneous, as none of the evidence outlined above is related to any observations by the officers. Excluding consideration of whether the detective observed that the HIN was missing or not, the pertinent information came from two neighbors in addition to the detective's comparison of the jonboat in the defendants' yard to the reportedly stolen jonboat pictured in the neighborhood email.

"Because the non-confidential hearsay informants were the victims of the crimes, there was no requirement that their reliability be further corroborated in order

10

to show that probable cause existed." (Citation and punctuation omitted.) *Smith v. State*, 274 Ga. App. 106, 108-109 (1) (616 SE2d 868) (2005). "[A] concerned citizen informant has 'preferred status' insofar as testing the credibility of the informant's information." (Citation omitted.) *Smith v. State*, 304 Ga. App. 414, 416 (1) (a) (696 SE2d 140) (2010).

2. Further, the trial court erred in suppressing evidence of the illegally-seized tackle box because it would have been discovered inevitably. The admission of the evidence seized in violation of the Fourth Amendment "hinges upon whether it qualifies as evidence that would inevitably have been discovered." *Teal v. State*, 282 Ga. 319, 325 (2) (647 SE2d 15) (2007). The State must demonstrate a reasonable probability that the evidence would have been discovered by lawful means, which were already possessed by the police and being actively pursued before the illegal conduct occurred. Id. at 326. An investigation that took place before the illegal seizure and yielded information that would serve as the basis for a search warrant could be the "lawful means" that would have lead to the inevitable discovery of the illegally seized evidence. Id.

Here, the detective who obtained the search warrant possessed information about the allegedly stolen boat and other stolen items, he was actively pursuing

investigation of that information, and that information provided probable cause to authorize a search of the boat which would have yielded the tackle box. Accordingly, the trial court also erred in suppressing evidence of the tackle box that would have been inevitably discovered as part of the lawful investigation and execution of the search warrant. See *Wilder v. State*, 320 Ga. App. 497, 499 (1) (740 SE2d 241) (2013); *Schweitzer v. State*, 319 Ga. App. 837, 839 (738 SE2d 669) (2013).

*Judgment reversed. Branch, J., concurs. Boggs, J., concurs in the judgment.*