**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 13, 2013**

# In the Court of Appeals of Georgia

A13A1052. NEWSOME v. THE STATE.

RAY, Judge.

After a jury trial, Mark Newsome was convicted of two counts of aggravated assault (OCGA § 16-5-21), one count of armed robbery (OCGA § 16-8-41), two counts of false imprisonment (OCGA § 16-5-41), one count of burglary (OCGA § 16-7-1), one count of theft by taking (OCGA § 16-8-2), and one count of possession of a firearm during a felony (OCGA § 16-11-106).[1] Newsome appeals from his convictions and the denial of his new trial, asserting that the trial court committed the following errors: failing to give requested jury instructions; allowing the jury to rehear a portion of the arresting officer's testimony; and failing to merge one of his

---

[1] Shareef Reynolds was named as a co-defendant in the indictment and was tried jointly with Newsome. He is not a party to this appeal.

aggravated assault convictions with an armed robbery conviction. For the following reasons, we affirm in part, vacate in part, and remand for resentencing.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the appellant is no longer entitled to the presumption of innocence. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence shows that during the early morning of July 20, 2004, Sharra Henry and her roommate Latasha Arnold were asleep in the bedroom of her home in Palmetto, Georgia. Henry's three-year-old son was asleep in his room. At about 3:00 a. m., Henry was woken up when her bedroom door was "kicked wide open" by two armed male intruders. One of them held "some type of machine gun . . . right in [Henry's] face" and told her and Arnold not to move. The intruders forced the two women to get out of bed and sit in front of the dresser in their bedroom, and told them "to give us, you know, what we had." At some point a third armed intruder entered the bedroom. Arnold gave one of the intruders about $800 in cash before she was hit across the face with a gun. After pleading with the intruders not to go into her son's room, one of the intruders kicked Henry in the stomach, "knocking [her] from [her] dresser to the end of the bed."

2

Henry and Arnold were taken into the living room while the three intruders ransacked the house. In addition to the cash, the intruders stole necklaces, clothes, a computer, an Xbox, and "just about anything they could put [their] hands on." The intruders then drove off in Henry's 2002 Mitsubishi Diamante. Henry immediately got up and ran to the phone to call 911.

Corporal Michael Upshire of the Palmetto Police Department was on patrol on Highway 29 when he heard a be-on-the-lookout call ("BOLO") for a white Mitsubishi with a certain license plate. A few minutes after hearing the BOLO call, Corporal Upshire saw a car matching the BOLO description and attempted to initiate a stop of the car. As he turned on his lights, the car slowed down; two black males exited and ran into the woods in separate directions. He followed the Mitsubishi's driver into the woods and radioed for another nearby officer to "go after the passenger." After a brief chase, Corporal Upshire returned to stop the Mitsubishi "because when they both got out of the car, the car kept going down southbound on Highway 29." The other officer successfully caught the car's driver, later identified to be Newsome. The car's passenger, Newsome's co-defendant, was apprehended later that day. A subsequent inventory of the Mitsubishi revealed four firearms in the car, including a handgun and

3

a shotgun. Several of the items taken from Henry's home that morning were also found in the car.

1. Newsome contends that the trial court erred in failing to give the suggested pattern jury instructions on "mere presence" and "mere association." We disagree.

Newsome argues that the facts of the case warranted both instructions because they were material to his defense strategy, which "was that he was never inside the home and the State failed to present any evidence that directly connected him to either the home or the abandoned vehicle[.]" Newsome contends that because neither the victims nor Corporal Upshire saw his face and because the officer who eventually apprehended and arrested Newsome did not testify at trial, the State's case against him hinged solely upon his arrest in proximity to Henry's car and his connection to the co-defendant . Newsome further contends that a "mere association" charge is warranted because his conviction was based upon his relationship with the co-defendant, who was positively connected with the crimes. .

"It is, of course, true that mere presence [or] association . . . , without any evidence to show further participation in the commission of the crime, is insufficient to authorize a conviction." (Citation and punctuation omitted.) *Mattox v. State*, 196 Ga. App. 64, 66 (3) (395 SE2d 288) (1990). However, contrary to Newsome's

4

assertions, there was evidence beyond his mere presence or mere association with the co-defendant connecting him to the crimes. Corporal Upshire testified that he noticed that the driver who escaped from the moving vehicle was wearing the same shirt as Newsome, who was apprehended not long after the police chase began.[2] When taking an inventory of the Mitsubishi, they found weapons consistent with those described by the victims, as well as items stolen during the robbery. See *Palmer v. State*, 294 Ga. App. 85, 88 (3) (668 SE2d 523) (2008). The rules that mere presence at the scene of a crime or mere association with one associated with the crime are insufficient to convict are

> actually a corollary to the requirement that the State prove each element of the offense charged . The trial court here correctly instructed the jury on the duty of the State to prove each element of the crime beyond a reasonable doubt and instructed the jury fully on the law of circumstantial evidence. Under these circumstances, there was no reversible error in the refusal to give the requested charge[s].

(Citation and punctuation omitted.) Id. Accord *Muhammad v. State*, 243 Ga. 404, 405-406 (1) (254 SE2d 356) (1979). Here, the trial court charged the jury

---

[2] Thus, the jury had testimony of Newsome's flight from the police as evidence of his potential involvement in these crimes.

5

that the indictment is not evidence of guilt; that the presumption of innocence remains with defendant throughout the trial unless and until overcome by evidence; that the State has the unalterable burden to establish guilt beyond a reasonable doubt; on the credibility of the witnesses and conflicts in the evidence; on the quality of circumstantial evidence to convict; and on parties to a crime.

(Citations omitted.) *Kelley v. State*, 279 Ga. App. 187, 190 (2) (630 SE2d 783) (2006). In light of the jury instructions taken as a whole, we conclude that the trial court did not err by failing to give a specific jury charge on mere presence or mere association.

2. Newsome argues that the trial court abused its discretion by permitting the jury to re-hear selected portions of the testimony of Officer Green, who took Newsome into custody after his capture, after the jury began deliberations. Specifically, Newsome contends that the trial court prejudiced him by highlighting select portions of an officer's testimony emphasizing facts harmful to him without placing them in context. We disagree.

During deliberations, the jury sent a note to the trial court asking to "see Officer Green's testimony."[3] After being instructed to narrow the scope of their request, the jury foreperson explained that the jury was interested in rehearing Officer Green's testimony related to the time of his arrival at the crime scene. After taking the jurors' request under advisement, the trial court decided to read what it determined to be the relevant portions of Officer's Green's testimony concerning when he arrived at the scene, when Newsome was apprehended, and where he was apprehended relative to the location of the stolen vehicles. After instructing the jury not to place "any undue emphasis" on the testimony because they had heard it twice, the trial court read the transcript.

It is well settled "that is permissible for the trial judge, in his discretion, to permit the jury at their instigation to rehear requested parts of the evidence after they have retired and begun deliberations." (Citation and punctuation omitted.) *Barnes v. State*, 230 Ga. App. 884, 886 (2) (497 SE2d 594) (1998). Further, "absent special circumstances, which might work an injustice[,]" it is for the jury to request and to limit what they desire to rehear. (Citations and punctuation omitted.) *Dorsey v. State*,

---

[3] The note sought access to Officer Green's testimony as to (1) what time Newsome was apprehended and (2) where he was apprehended relative to the stolen vehicle.

252 Ga. App. 33, 35 (2) (555 SE2d 498) (2001). Here, where the trial court properly issued cautionary instructions to the jury and limited its re-reading of Officer Green's testimony to only the portions related to the jury's questions, we find no special circumstances that would require reversal, and we find that the trial court did not err in allowing the jury to rehear the testimony it requested. Id.

3. Newsome contends, and the State concedes, that his conviction and sentence as to Count 2 (aggravated assault of Latasha Arnold) should have merged under OCGA § 16-1-6 with Count 3 (armed robbery of Latasha Arnold). This Court has jurisdiction to consider this contention even though Newsome failed to raise the claim before the trial court. *Mikell v. State*, 286 Ga. 722, 725 (3) (690 SE2d 858) (2010).

Count 2 of the indictment alleged that aggravated assault had been committed by "an assault upon the person of Latasha Arnold by brandishing her with a firearm, a deadly weapon." Count 3 of the indictment alleged that Newsome committed armed robbery by "unlawfully, with the intent to commit theft, take from the person and immediate presence of Latasha Arnold[,] United States currency, the property of Latasha Arnold, by use of a handgun."

In *Drinkard v. Walker,* 281 Ga. 211 (636 SE2d 530) (2006), the Supreme Court of Georgia adopted the "required evidence" test for determining when one offense is

8

included in another under OCGA § 16-1-6. Id. at 214. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Punctuation and footnote omitted.) Id. at 215.

Applying this test, we find that the aggravated assault should have been merged with the armed robbery count. Although the armed robbery statutory provision[4] requires proof of a taking, which is not a required showing under the applicable

---

[4] OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon").

aggravated assault provision,[5] the latter provision does not require proof of any fact that was not also required to prove armed robbery, as that offense could be proved under the indictment of that case. See *Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010) ("there is no element of aggravated assault with a deadly weapon that is not contained in armed robbery"; aggravated assault by striking victim with a gun merged into armed robbery of victim). Accordingly, Newsome's aggravated assault conviction and sentence must be vacated, and we remand the case to trial for resentencing. Id.

*Judgment affirmed in part, vacated in part, and remanded for resentencing. Barnes, P. J., and Miller, J., concur.*

---

[5] OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults: . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury").