**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 20, 2020**

# In the Court of Appeals of Georgia

A19A1945. SHOWERS v. THE STATE.

MERCIER, Judge.

Following a jury trial, Michael Showers was convicted of burglary in the first degree. He filed a motion for new trial, which the trial court denied. Showers appeals, arguing that the evidence was insufficient and that the trial court committed plain error in its jury instructions. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence at trial showed the following. See *Vasquez v. State*, 306 Ga. 216, 217 (1) (830 SE2d 143) (2019). The victim, a home builder, purchased a house in 2012 that he planned to tear down and replace with a "dream" home for his family. At the end of 2015, the house was still under construction, but the framing, windows, doors, roofing, plumbing, electrical and HVAC systems had been completed. While the victim was building the

house, he kept construction materials in the basement and lived at another location. Beginning in November 2015, the victim noticed that some of the materials stored in the basement had been stolen. On a later date, the victim noticed that more materials were stolen, and he reported the second loss to the police. Following a third loss, which the victim's wife reported to the police, the victim planned to watch the house at night.

On the night of January 3, 2016, the victim watched the house from his business partner's nearby driveway. At approximately 3:00 a.m. on January 4, 2016, he heard noises and drove towards his house. He observed a Toyota 4Runner backing up into the yard with a trailer attached to it. The driver left the trailer in the yard and drove away. The victim followed the 4Runner for two miles, until the 4Runner entered an apartment complex. While the victim was following the 4Runner, he took a photograph of its license plate. The victim then returned to his partner's house, and they reported the incident to the DeKalb County Police Department.

A police officer arrived at the victim's house at approximately 4:30 a. m., observed Andy Weems walking out of the house with wood in his hands, and arrested him. Weems claimed that he was working and that he had been dropped off at the house by "Mr. T" in a gold Toyota 4Runner, but he did not know the name of the

2

company he was working for. The trailer, which was still on the premises, contained treated wood that had been in the house's basement.

Following Weems's arrest, the victim, who had been at the scene with the police officer, began driving away from the house when he observed the 4Runner returning to the scene. The victim called his partner, and the two were able to use their vehicles to block the 4Runner from leaving the area. The victim and his partner called the police, who arrived and arrested Showers, the driver of the 4Runner. The victim observed cut, rolled up copper wires in the 4Runner that had been connected to the air conditioning units in the basement of his house. After Showers was arrested, the police searched his vehicle and found copper pipes with "jagged edges as if they had been cut," along with cutting tools.

The victim and his partner informed the police that, based on a neighbor's surveillance footage, the prior thefts occurred in a similar fashion, namely that a 4Runner would drop a trailer off at the house at approximately 4:00 a.m. and then return at approximately 7:00 a.m. to pick up the trailer from the house. A detective conducted a National Crime Information Center inquiry of the license plate shown in the photograph taken by the victim and determined that the Toyota 4Runner was registered to Showers. Following Showers's arrest, he provided his home address,

3

which was in the same apartment complex that the victim saw the 4Runner enter on January 4, 2016.

Weems, who was Showers's cousin, testified at trial that he and "two or three" other men were dropped off at the victim's house by Showers on the night of the burglary, where Weems was told to load "some 2-by-4s" from the house onto the trailer. Weems claimed that Showers asked him to go, that he believed it was just a construction job, and he did not think it was odd to be working at 3 a. m. Neverthless, Weems plead guilty to burglary in the first degree and was sentenced to serve five years on probation in exchange for his testimony at Showers's trial.

Showers took the stand at trial and testified that on the night of the burglary, Weems called him and asked him for a ride to work. Showers then took him and another man, Antonio Tripp, to the house, dropped them off and returned to his apartment where he went to sleep. He claimed that when he was stopped by the victim and his partner near the victim's house, he was not returning to the house to pick up Weems and the trailer, but instead he had left his apartment to purchase cigarettes and coffee from a gas station and happened to drive by the house on the way back to his apartment, despite the fact that he had to travel on the interstate to do so and passed

multiple gas stations on the way. Showers testified that the copper found in his 4Runner belonged to Tripp.

1. Showers argues that the evidence was insufficient to sustain his burglary conviction because the house did not constitute a dwelling under OCGA § 16-7-1 (a) (1). Showers was charged with burglary in the first degree pursuant to former OCGA § 16-7-1 (b). The indictment charged that Showers "did unlawfully without authority and with intent to commit a theft therein, enter the dwelling house of another[.]" OCGA § 16-7-1 (b) (2016) provided that: "A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another . . . or other such structure designed for use as the dwelling of another." Dwelling is defined as "any building, structure, or portion thereof which is designed or intended for occupancy for residential use." OCGA § 16-7-1 (a) (1) (2016). Showers claims that because the house was under construction at the time of the burglary and had not been occupied, it did not fall within the statutory definition of "dwelling".

> When we consider the meaning of a statute, we must presume that the
> General Assembly meant what it said and said what it meant. To that

5

end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). "Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." Id. at 173 (1) (a) (citation and punctuation omitted).

The house was under construction at the time of the crime and, without dispute, no one had lived in the house yet. However, the victim was in the process of building his home and had completed the house's framing, and installed the windows, doors, roofing, plumbing, electrical and HVAC systems. The statute's plain language states that a dwelling is any building "designed or intended for occupancy for residential use." OCGA § 16-7-1 (a) (1) (2016). The victim intended to live in the house with his family and was building the house over time as he was able to afford to purchase construction materials.

This Court has previously held that even a one-room camper without a bathroom, electricity or refrigeration constituted a dwelling for the purposes of the statute because it was occasionally used as a dwelling. *Frazier v. State*, 352 Ga. App.

6

98, 100-101 (834 SE2d 107) (2019). Whether the construction of the house was complete or whether the victim had begun living in the home does not preclude a finding that the house was a dwelling at the time of the burglary. The house was designed for use as a dwelling pursuant to the plain language of the statute, and therefore our search for statutory meaning must end. See *Deal*, supra.

Moreover, the jury was authorized to find that Weems did not have authority to enter the dwelling. As Showers was a party to the entry and the ensuing theft, the evidence was sufficient to authorize his conviction for burglary. See generally *Jackson v. State*, 305 Ga. 614, 617 (1) (825 SE2d 188) (2019) (evidence sufficient to support defendant's burglary conviction where defendant's accomplice entered residence without authority and committed a burglary to which defendant was party).

2. Showers argues that the trial court erred in three ways with respect to the instructions it gave or failed to give to the jury. As Showers failed to object to the jury charges at trial, we review the jury charges for plain error. See OCGA § 17-8-58 (b).

> In the context of jury instruction errors, plain errors are evaluated on appeal under the following four-part test: First, there must be an error or defect - some sort of deviation from a legal rule - that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected

7

the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error - discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Vasquez*, supra at 225 (2) (citation and punctuation omitted). "Satisfying all four prongs of this standard is difficult, as it should be." *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citation and punctuation omitted).

(a) Showers claims that the trial court erred by failing to give the jury an accomplice corroboration charge regarding Weems's testimony. The trial court charged the jury that "[t]he testimony of a single witness, if believed, is sufficient to establish a fact. Generally, there is no legal requirement for corroboration of a witness provided you find the evidence to be sufficient. In assessing the credibility of a witness, you may consider any possible motive in testifying, if shown."

OCGA § 24-14-8 provides that "[t]he testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless,

corroborating circumstances may dispense with the necessity for the testimony of a second witness[.]"

Here there was evidence to support a finding that Weems was an accomplice of Showers, in that Weems was observed leaving the home with property taken from inside the house, and both Weems and Showers testified that Showers had given Weems a ride to the house. Such evidence supports the finding that one is an accomplice. See *Jones v. State*, 242 Ga. 893, 893-894 (1) (252 SE2d 394) (1979) (witness's presence, companionship, and conduct before and after the crime are circumstances from which intent to participate in a criminal act can be inferred). Given the evidence, it was clear and obvious error for the trial court not to instruct the jury as to the corroboration requirements of OCGA § 24-14-8 so that the jurors could properly evaluate Weems's testimony and the need to have it corroborated by other witnesses or evidence presented at trial. See *Vasquez*, supra at 229 (2) (c).

However, Showers does not meet the third prong of the plain error test, as he fails to establish that omitting the corroboration instruction probably affected the outcome of his trial. Showers himself testified that he drove Weems to the house where the burglary occurred. Moreover, the victim and his business partner testified that Showers returned to the house later that morning. Therefore, had the jury

9

received a proper instruction, it would have had to reject evidence from Showers himself, along with the testimony of the victim and his business partner, in order to find that the majority of Weems's testimony was not corroborated.[1] See *Lyman v. State*, 301 Ga. 312, 318-319 (2) (800 SE2d 333) (2017) (failure to give accomplice jury instruction was harmless given multiple non-accomplice sources linking defendant to the crime). Furthermore, the court instructed the jury regarding its role in determining the facts and resolving evidentiary issues, the presumption of innocence, witness credibility including the witness's motive for testifying and any leniency they may have received in exchange for their testimony, and intent. In light of the jury instructions viewed as a whole, and the corroboration of Weems's testimony presented at trial, we find that Showers has not met his burden of affirmatively showing that the court's failure to give an accomplice corroboration instruction probably affected the outcome of his trial. See *Lyman*, supra at 320-321 (2).

---

[1] While Weems testified that Showers asked him to go to the house, and Showers testified that Weems asked for a ride, the distinction is not material as either way the jury could have found that Showers intended to be a party to the crime. See *Jones*, supra.

(b) Showers contends that the trial court erred by giving a jury charge regarding recent possession of stolen goods. The State requested the pattern jury charge and, following the charge conference, the trial court gave the jury a modified version of the recent possession of stolen goods charge. The trial court instructed the jury that:

> If you should find beyond a reasonable doubt that the crime of burglary has been committed as charged in this indictment and in [sic] recently thereafter, the defendant shall be found in possession of any alleged stolen property, that would be a circumstance along with all of the other evidence from which you may infer guilt as to the charge of burglary in the first degree as set forth in this indictment.
>
> If you find the evidence merits such an inference, you may not draw an inference of guilty if, from the evidence, there is a reasonable explanation of the possession of such property consistent with a plea of innocence, which is a question solely for you, the jury to determine.

(i) Showers argues that the evidence did not support the instruction.

> To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge. It is a question of law whether the evidence presented is sufficient to authorize the giving of a particular charge. Thus, where a particular charge is requested, it is the duty of the trial court to determine whether there is slight evidence to support the charge.

11

*Hamm v. State*, 294 Ga. 791, 794 (2) (756 SE2d 507) (2014) (citations and punctuation omitted).

In the present matter, the victim testified that he observed in the back of Showers's 4Runner cut, rolled up copper wires that had been connected to the air conditioning units in the basement of the house. Cut copper piping and cutting tools were also found in the 4Runner. The trial court did not err in charging the jury on recent possession of stolen goods given that the charge was supported by evidence presented at trial. See *Johnson v. State*, 297 Ga. App. 341, 343 (677 SE2d 402) (2009) (trial court correctly provided recent possession of stolen goods jury charge despite defendant's argument that he believed he legally possessed the property because "[w]hether a defendant's explanation of possession is satisfactory is a question for the jury.") (citations and punctuation omitted).

(ii) Showers argues that the trial court erred because the charge given on recent possession of stolen property differed from the pattern charge. Specifically, the pattern charge states in pertinent part, that the jury may infer guilt "[i]f you should find beyond a reasonable doubt that the crime[] of [burglary in the first degree] has . . . been committed as charged in this indictment and that certain personal property (as set forth in this indictment) was stolen as a result of such crime . . . ." Suggested

12

Pattern Jury Instructions, Vol. II: Criminal Cases (2019), § 2.62.30. While the suggested pattern charge refers to property being stolen as a result of the specified crime, the indictment in the present matter did not include an allegation that any property was stolen; instead it charged that Showers and Weeks "did unlawfully without authority and with the intent to commit a theft therein, enter the dwelling house of another[.]"

"It is well-established . . . that jury instructions do not need to track, exactly, the language of pattern jury instructions." *Potts v. State*, 331 Ga. App. 857, 863 (1) (771 SE2d 510) (2015) (citation and punctuation omitted). Rather,

> [t]rial courts should tailor their charges to match the allegations of indictments, either by charging only the relevant portions of the applicable Code sections or by giving a limiting instruction that directs the jury to consider only whether the crimes were committed in the manner alleged in the indictment.

*Braley v. State*, 276 Ga. 47, 53 (31) (572 SE2d 583) (2002) (citation omitted). In this case, the language of the given jury charge closely approximates the jury charge given in *Johnson*, which was approved by this Court. See *Johnson*, supra at 342. In the present matter, the trial court tailored the charge to match the allegation of the

13

indictment and, as such, we cannot say that the trial court committed plain error in charging the jury on recent possession of stolen property. See id.

(c) Showers also argues that the trial court erred by failing to sua sponte give the jury pattern charges regarding knowledge, mere presence or mere association. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2019), §§ 1.43.10; 1.43.30; 1.43.31. "On appeal, we must review the jury charges as a whole." *Vasquez*, supra at 227 (2) (b) (citation omitted). The record demonstrates that the trial court gave the pertinent pattern jury charges on parties to a crime and intent. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2019), §§ 1.41.10; 1.42.10. As these charges cover substantially the same principles of law as the charges Showers claims the trial court should have given, the trial court did not commit plain error. See *Tumlin v. State*, 274 Ga. 309, 310 (3) (553 SE2d 592) (2001); *Newsome v. State*, 324 Ga. App. 665, 666-668 (1) (751 SE2d 474) (2013).

(d) Showers also claims that the trial court "cumulatively erred with its instructions to the jury." Georgia has recently adopted a cumulative error rule, stating that "Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel - at least where those errors by the court and

14

counsel involve evidentiary issues." See *State v. Lane*, ___ Ga. ___, 3 (1) ( No. S19A1424) (Feb. 10, 2020). Even assuming, arguendo, that the cumulative error rule applies to jury charges given by the trial court, we have rejected all of Showers's claimed errors, with the exception of the trial court's failure to give the accomplice jury charge but we found that the error did not probably affect the outcome of his trial. As Showers has failed to point to other trial court errors, we reject his argument that the trial court cumulatively erred in its charge to the jury. See generally id.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*